# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                  No. CIV 10-930 MCA/LFG
                                        No. CRIM 06-2605 MCA

RICKY BARKSDALE GREEN,

        Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      On September 29, 2010, Movant Ricky Barksdale Green ("Green") filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, with exhibits. [Doc. 1.] Green was allowed to amend and supplement his § 2255 motion [Doc. Nos. 7, 8], but failed to do so by the deadline. [Doc. 9.] On December 13, 2010, Green filed a pleading arguing he had not received the Court's initial Order allowing him to supplement his § 2255 motion. [Doc. 10.] The Court granted Green additional time to file the supplemental motion, which Green filed on December 16, 2010. [Doc. 12.]  On February 14, 2011, the government filed a timely response. [Doc. 14.] On February

---

[1] **Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.**

25, 2010, Green filed a motion for extension of time to file a reply and also stated he did not receive the government's response. [Doc. 15.] The Court required the government to re-serve Green with its response and then to do so again after receiving notice of Green's change of address. [Doc. Nos. 16, 19.] On March 28, 2011, Green filed a reply. [Doc. 21.] Green's § 2255 motion is fully and adequately briefed. Green currently is incarcerated at the Federal Correctional Institution in Texarkana, Texas. [Doc. 21.]

2.      In making its recommendation on this matter, the Court examined all of the pleadings and attachments in this civil matter and the related criminal case [No. CR 06-2605],[2] and reviewed transcripts of the pertinent criminal proceedings and hearings before the Honorable M. Christina Armijo. After carefully considering the pleadings, attachments, argument by parties and the pertinent law, the Court recommends that Green's § 2255 petition be denied. Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Green is not entitled to relief, the Court concludes that no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255; United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).

## Background

3.      On August 31, 2006, Pecos Valley Drug Task Force agents executed a search warrant at Green's residence in Carlsbad, New Mexico. [Presentence Report ("PSR"), at 4.] Agents found Green in a bedroom, lying on the floor near a bed. [Id., at 5.] Agents then took Green into the living room and when they cleared a space on the couch, they observed the handle of a pistol. [Id.] The

_____

[2]The Court refers to pleadings in the criminal case, No. CR 06-2605, as CR Doc. __. Pleadings in this civil habeas proceeding are referred to as Doc. ___.

pistol was loaded with one round in the chamber. [Id.]  Agents also observed two Sentry safes on the floor near the couch. [Id.]

      4.      Green was advised of his Miranda rights. [PSR, at 5.] Green claimed he did not reside at the residence and only stayed there occasionally. [Id.] Green indicated to the Agents that the keys to his vehicle were on the kitchen counter of the residence. [Id.] In response to a request for the keys to the safes, Green stated the safes were not his.  However, Agents subsequently found that the keys to the safe were on the same key ring as Green's vehicle keys. [Id.]

      5.      Inside one of the safes, Agents found 19.51 net grams of cocaine base, 32.02 net grams of cocaine, 10.75 grams of actual methamphetamine, and 49.84 net grams of marijuana. [PSR, at 5.] The safe also contained a set of digital scales, spoons with crack cocaine residue, and cash in the amount of $4,054. [Id.] In addition, Agents found titles and receipts in the safe bearing Green's name. [Id.]

      6.      When Agents executed the search warrant, Green had prior felony convictions for trafficking in cocaine, distribution of a controlled substance, and being a felon in possession of a firearm. [PSR, at 6.][3]

      7.      On October 10, 2006, an arrest warrant was executed as to Green. [CR Doc. 6.] On December 21, 2006, a grand jury indicted Green with: (1) possessing with the intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1); (2) possessing with the intent to distribute less than 500 grams of a mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1); and (3) possessing with the intent to distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(a). [CR Doc. 13.] A second superseding indictment was entered on

---

[3]These underlying facts are taken from the government's response [Doc. 14], which cite to the PSR as noted.

August 16, 2007 adding two additional counts: (4) possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(I); and (5) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [CR. Doc. 72, 136; <u>United States v. Green</u>, 336 F. App'x 837, 838, 2009 WL 1991364 (10th Cir. Jul. 10, 2009) (unpublished).]

8.    On October 13, 2006, Charles Harwood was appointed counsel for Green. [CR Doc. 4.]

9.    On November 2, 2006, Albert Granger was allowed to substitute as counsel for Green. [CR Doc. 12.]

10.   On May 22, 2007, Green, through counsel, filed a motion to suppress evidence, which was denied after a hearing. [CR Doc. Nos. 37, 44, 51.]

11.   On July 20, 2007, the Court permitted Attorney Granger to withdraw due to Green's inability to pay for retained counsel, and on August 23, 2007, the Court appointed Federal Public Defender Charles Harwood as Green's attorney. [CR Doc. Nos. 83, 84.]

12.   On October 5, 2007, Green, through counsel, filed a motion to suppress statements and physical evidence. [CR Doc. Nos. 90, 93.] After a hearing on November 1, 2007, the Court denied the motions. [CR Doc. 112.]

13.   During the November 1, 2007 hearing, Green attempted to speak directly to the Court several times, notwithstanding the presence of his attorney.  The Court advised Green that his attorney needed to present his arguments. [*See, e.g.,* CR Doc. 124, pp. 42, 45 ("November 1 Transcript").]  During the hearing, Green stated that he would not be ready for the scheduled trial as he intended to "go pro se." [November 1 Transcript, p. 45.] In response to additional questions by the Court, Green stated that he was requesting to proceed "pro se." [<u>Id.</u>, p. 46.] Green further stated that there were certain important issues that he needed to have addressed, and if he had to go

pro se to do that, he would have "no choice but to go pro se." [Id.] After hearing argument on the motions from Green's attorney, the Court asked Green directly what matters he believed had not yet been covered or presented to the Court. [Id., pp. 52-55.] Attorney Harwood was directed to confer with Green regarding these matters, and then stated that Green wanted him to "pursue issues that I don't think have enough merit for me to be able to that under my ethical obligations . . . ." [Id., p. 56.] Attorney Harwood explained that he and Green had "almost reached a point where our relationship is breaking down," and that from what Green had told Harwood, Green "wants to proceed pro se." [Id., p. 57.] The Court required Harwood to provide such a request in writing and noted it would conduct a hearing on the issue.

14.     At a December 27, 2007 status conference, the Court permitted Attorney Harwood to withdraw after conducting a sealed *ex parte* conference with Green and Harwood regarding the request to withdraw as attorney. [CR Doc. 115 (minutes).] On that same date, the Court appointed Ann Steinmetz to represent Green. [CR Doc. 116.]

15.     On January 25, 2008, Green, through counsel, filed a fourth motion to suppress, and on February 27, 2008, the Court conducted a hearing on the motion. [CR Doc. 127.]

16.     At the February 27, 2008 hearing, the Court noted that it would hear argument on the fourth motion to suppress, to which was attached a handwritten motion to suppress that apparently was prepared by Green and submitted to the Court for filing ("amended motion"). [CR Doc. 149, p. 3 ("Feb. 27 Transcript").] Attorney Steinmetz explained that while she had presented the arguments requested by Green, he still wished to present argument to the Court on his motion. [Feb. 27 Transcript, pp. 4-5.] Steinmetz also informed the Court that Green had mailed the amended motion to suppress evidence to the Court while counsel was out of town and that the Court did not file it as it was submitted out of time.  Steinmetz requested that the amended motion be filed.  The

5

Court allowed the amended motion to be attached as an exhibit but denied permission to file the untimely motion.  The Court also found that the issues raised in the amended motion appeared to have been addressed previously.  [Id., p. 7.]

     17.    Green objected to the Court's refusal to file the amended motion and claimed his attorney, Steinmetz, had plenty of time to file it within the deadline. [Id., p. 8.] The Court marked the amended motion as Exhibit A to the hearing. [Id., p. 9.] The Court allowed Green to clarify his position as to the substance of his amended motion. [Id., pp. 9-12.] The Court found that all of the issues raised by Green had been raised before and to the extent they were not addressed previously, the government was to address them at the present hearing. [Id., p. 13.]

     18.    At this point in the hearing, Attorney Steinmetz informed the Court that Green wished to argue the motion because he was facing possible life imprisonment and felt very strongly about it. [Id.,]

     19.    During a bench conference, the Court addressed counsel about the trial setting and noted that there was mention at an earlier hearing, before Steinmetz was appointed as Green's attorney, that Green wanted to represent himself at trial.  The Court wondered if this was still a possibility and whether a hearing should be arranged.  [Id., p. 16.] In discussing the Court's inclination to allow Green himself to address the Court and examine the witnesses, the government was concerned that it appeared that Green was, "in effect, . . . representing himself with Ms. Steinmetz as sort of standby counsel."  The prosecutor referred to Faretta v. California, and the possibility that a "very detailed hearing" be held as to this matter. [Id., pp. 16-17.] Attorney Steinmetz responded that at that point Green had not asked to represent himself at trial.

     20.    The Court would allow Green to present argument on his motion at the February 27 hearing, but was concerned that he not make any comments that might result in self incrimination.

[Id., p. 19.] The Court advised Green that it would allow limited participation by him during the hearing and asked him to describe the extent of his participation.  Green stated that he wished to cross examine witnesses.  The Court advised Green that he had the right to remain silent and that he did not have to present any evidence.  The Court requested that Green confer with Attorney Steinmetz regarding what Green might say in the hearing so as to avoid any incriminating statements.  The Court further advised Green that there was always a risk in speaking and, even in asking a question, there was a risk of self incrimination.  [Id., pp. 25-26.]

21.     The Court again advised Green that he should confer with counsel before speaking and after a full opportunity to listen to the advice of counsel.  The Court noted that Steinmetz "is a very experienced attorney particularly in cases such as this." [Id., p. 26.] During the hearing, Steinmetz participated to a limited degree and made objections on Green's behalf. [*See, e.g.,* id., p. 35.]

22.     Green cross-examined the first witness who testified at the hearing.  [Id., p. 44.]

23.     Because of Green's request for the testimony of two additional witnesses, for which the Court found good cause, the hearing was continued until those two witnesses could be present. [Id., pp. 63, 65.] Green then requested the testimony of two more witnesses. [Id., p. 66.] The Court required the government to procure the presence of the other two witnesses at the continuation of the hearing.  At the end of the hearing, the Court again urged Green to work with his attorney, whom the Court described as a "very experienced attorney," who had a "great deal of wisdom as well as knowledge . . . ." [Id., p. 71.]

24.     On March 6, 2008, the Court resumed the hearing on Green's fourth motion to suppress. [CR Doc. 166 ("March 6 Transcript").] The Court first noted that the government had brought seven witnesses to the hearing in the event that Green wished to examine them.  At that

point, Green stated "Ms. Steinmetz is not representing me." [March 6 Transcript, p. 4.] He then repeated that same statement three times. [Id., p. 5.] Steinmetz requested that the Court continue to allow Green to question the witnesses and argue what she described as "basically his motion." [Id.] Steinmetz further informed the Court that since the last hearing, Green had mailed her a pleading or fill-in-the-blank form that appeared to discuss discharge of his attorney.  Steinmetz believed Green was attempting to raise that matter with the Court by stating Ms. Steinmetz was not representing him.  [Id., p. 6.] Steinmetz produced a copy of the form to the Court that was entitled "Unopposed Motion to Dismiss Defendant's Counsel."  The substance of the pleading requested an Order dismissing defense counsel and recited New Mexico rules regarding competence, communication, and diligence. [Id., p. 7.]

25. The Court asked Green to address the Court concerning the motion and Green asked for an *ex parte* proceeding.  Green stated that "Ann Steinmetz is no longer representing me and Ann Steinmetz does not speak for me.  Ann Steinmetz had nothing whatsoever to do with my case anymore, Your Honor." [Id., pp. 8-9.] The Court asked Green if he was requesting at this time to proceed by representing himself.  Green answered: "I tried that."  The Court asked if it was Green's intention to represent himself, "that is, to act in a pro se capacity as your own attorney throughout this case?"  Green responded: I"m not knowledgeable enough to do that . . . and I'm not stupid enough to allow an attorney as Ms. Steinmetz to represent me." [Id., p. 9.]

26. The Court summarized the prior hearing where Steinmetz and Green both participated but stated she sensed Green now did not want that same relationship in the case and that he, instead, wished to act in a pro se capacity.  The Court wished to be very clear on whether this was Green's intention. [Id., p. 10.] Green stated "those weren't my intentions from the start."  But, he clarified that he had told Steinmetz "if I must, if I have no choice, and must represent myself,

8

then I will if I must."  Green stated he was under the impression he would be given a competent attorney to represent him but that he had not been given that competent attorney.  He then again stated: "And no, Your Honor, I don't feel like I'm qualified to represent myself.  And I'm definitely not stupid enough to allow Ms. Steinmetz to continue to represent me. . . ." [Id., p. 11.]

27.     At this point, the Court conducted an *ex parte* hearing about the attorney-client relationship between Green and Steinmetz that lasted about two hours.  The Court resumed the motion hearing after 5 p.m. and finished a little before 9 p.m.

28.     During the *ex parte* hearing, the Court allowed Green to explain at length his concerns about Attorney Steinmetz's representation of him. [March 6, 2008 *ex parte* Transcript, pp. 1-7 ("March 6 *ex parte* Transcript").]

29.     When asked at the *ex parte* hearing if Green wished to represent himself, Green responded:

> I am not.  I am not qualified.  Your Honor.  I tried.  I tried.  The only – I can proceed with this hearing today, Your Honor, but the only way I can proceed . . . if I got a transcript of the last – of what took place, about 30 minutes to review the transcript of the hearing we have already had in this . . . if I had a chance to interview the witnesses, Your Honor, before we came over here and conducted this, well, we could – I'll proceed pro se, Your Honor.  I think I must. If the court is telling me – if what the Court – if what I'm getting from the Court is that I have no choice today on the matter, then I must.

[March 6 *ex parte* Transcript, p. 8.] The Court then asked: "Do I take your comments to mean that you do not want to have an attorney assist you in any way?" [Id.] Green stated:

> No ma'am, that's not what I'm saying.  I'm saying that Mrs. Steinmetz is not speaking for me.  If Ms. Steinmetz gets up here to speak, she's not speaking on my behalf.  And I'm also saying, Your Honor, if I must, if the Court says that I must continue this hearing pro se, then I will, Your Honor.  If the Court leaves me with no choice but to continue and to proceed with this, Your Honor, I will.

9

[Id.]

30.    At this point in the *ex parte* hearing, the Court addressed Green concerning the gravity of the charges against him and read the third superseding indictment to him.  The Court asked Green if he understood the charges and his right to have an attorney represent him during the proceedings.  Green responded: "Yes ma'am." [Id., pp. 9-12.] Green was again told that he had the right to have an attorney represent him through all the pertinent proceedings and he stated he understood this right. [Id., p. 12.]  Green was advised of the penalties he faced if convicted. [Id., pp. 15-16.]

31.    Attorney Steinmetz responded to Green's complaints by stating she had discussed with Green the potential defenses, had hired an investigator, and believed, for whatever reason, Green was stalling. [Id., pp. 16-28.]

32.    After hearing the positions of Green and Steinmetz, the Court stated:

> I've heard your statements about why you don't want Ms. Steinmetz to represent you, but I have found that she has provided to you effective assistance here.  I have found that she is competent counsel, so I'm not going to let her withdraw.  I'm not going to dismiss her as your attorney.  So my question to you is, do you want Ms. Steinmetz to represent you or do you want to represent yourself pro se?

> Green: I'll be going pro se.

> Court: Do you wish to appear pro se?

> Green: Yes.

> Court: You wish to go pro se, is that what you're saying?

> Green: Yes, ma'am.

[Id., p. 32.]

33. To ensure Green understood his decision, the Court asked about his education, which included two years of junior college. [Id., p. 33.] Green responded to the Court's question about his mental status by stating that he was "thinking clearly" and was not under the influence of drugs or alcohol. Green also stated that he understood he could be found guilty "and sentenced to life." The Court further advised Green of his right to remain silent, of the risks of representing himself, and that Ms. Steinmetz would remain as stand-by counsel for questions and advice requiring specialized legal knowledge. [Id., pp. 33-37.]

34. In open court, after concluding the approximately two-hour *ex parte* hearing, the Court found that Steinmetz had, at all times provided affective assistance to Green regarding all legal matters in the case and that she was competent. The Court declined to release Steinmetz as Green's attorney or to allow her to withdraw and denied the motion to dismiss counsel. [March 8 Transcript, p. 12.]

> The Court has also found that the Court is not putting the defendant in the position of being forced to make a choice between incompetent counsel or appearing pro se because Ms. Steinmetz has been found to be competent. The Court has further found the defendant has not established good cause for the appointment of another attorney or new counsel in this case. I have asked Mr. Green . . . whether or not he desires to proceed pro se or whether he wishes to have Ms. Steinmetz represent him. . . . . The Court has undertaken a preliminary colloquy here concerning Mr. Green's education, his state of mind, various things and we're continuing that colloquy.

[Id., pp. 12-13.]

35. The Court advised Green again of the risks of proceeding pro se. The Court explained that it would appoint Ms. Steinmetz as stand-by counsel to answer any questions of a legal nature and to offer advice with respect to legal matters that arise during the course of the hearing or during the course of any trial, if he proceeded pro se. Green stated he understood this. [Id., p. 13.]

11

When asked what his intention was, Green stated: "To not have Ann Steinmetz represent me in no from, shape, or fashion."  The Court noted that it took Green's statement "then as your waiver of right to counsel?"  Green responded: "That's right." The Court asked: "And you intend to represent yourself in this case?"  Green answered: "I have no choice." [Id., pp. 13-14.]

36.     The Court found that Green's waiver of right to counsel was knowing, voluntary and intelligent.  The Court assigned Steinmetz to act as stand-by counsel and advised Green several times during the hearing that he might wish to seek stand-by counsel's advice. [Id., p. 25.]  Green attempted to call Steinmetz as a witness several times during the hearing but was not allowed to do so. [See, e.g., id., p. 30.] He also consulted at times with Ms. Steinmetz as stand-by counsel, and counsel spoke on his behalf.

37.     After examining a number of witnesses, Green sought to testify on his own behalf. [Id., p. 81.] The Court suggested Green consult with counsel but Green initially declined to do so. The Court further advised Green of the risks of self-incrimination and again suggested he consult with Steinmetz before testifying.  [Id., p. 81.] Green stated he understood the Court but also understood his testimony in a suppression hearing could not be used against him in a jury trial.  The Court explained that while the government could not use anything Green said in its case-in-chief at trial, any statements Green made at this hearing could be used for impeachment. [Id., p. 82.] Green stated he understood this and had had time to consult with stand-by counsel during a break.  Green then took the stand and had Steinmetz examine him. [Id., p. 83.] The government did not cross-examine Green.  The Court permitted both Green and the prosecution to provide closing arguments. The Court took the motion under advisement and subsequently denied it. [CR Doc. 157.]

38.     On March 24, 2008, the Court held a final pretrial conference before the jury trial began that afternoon. [CR Doc. 226 "March 24 Transcript".] The Court understood that Green

12

continued to desire to represent himself in this proceeding and asked if that was correct. [March 24

Transcript, p. 2.] Green responded: "No, ma'am."  The Court asked what his wish was at that point.

Green stated he had been forced to conduct the suppression hearing, that Steinmetz violated

attorney-client privilege, and that the court "found it upon themself or came to a decision that

[Steinmetz] did not violate the attorney privilege." [Id., p. 3.] Green proceeded to say:

> I am not educated enough, Your Honor, to represent myself in a trial
> of this magnitude, Your Honor.  If I am forced to represent myself,
> Your Honor, in a trial of this magnitude, then I will represent myself
> . . . .

[Id.]

39.    The Court observed that nothing had changed from the last time the Court addressed

these matters and made certain findings.  "I'm unable to find that [Steinmetz] has represented you

in any way that would be contrary to your interests.  She has provided competent counsel to you and

effective assistance. . . ." [Id.]

40.    Green asked what Steinmetz's function as stand-by counsel would be at trial.

> Court: Well, Mr. Green, you certainly have the right to represent
> yourself.  To the extent that you wish to seek her assistance with
> respect to how you proceed, if it involves questioning or examination
> or cross-examination or matters relating to a potential objection or a
> response to an objection, I would urge you to seek her advice in that
> regard.  You availed yourself of her services, the Court believes,
> quite effectively, the last time were in session . . . .

[Id., pp. 4-5.] The Court also explained to Green, once again, the risks in representing himself. [Id.,

p. 5.] Green then argued to the Court that he had asked Steinmetz to give the closing statement but

she had refused.  Steinmetz explained that her understanding under the ABA standards was that

stand-by counsel is just that and that because Green was acting as his own attorney, he had the right

to present opening and closing statements. [Id., pp. 6-7.]

41.     The government then requested to the Court to ask Green if he wanted Steinmetz to represent him at the trial.  The Court did so, and Green stated he wanted her to do the closing statement and to participate "somewhat" in examination of witnesses.  He also wanted her to raise objections on his behalf. [Id., pp. 8-9.] Green then clarified that he did not want Steinmetz to participate in the examination of witnesses. [Id., p. 9.]

42.     After further discussion with the Court, Steinmetz stated that she did not feel she could act as counsel in a "hybrid situation," although she could proceed as stand-by counsel. [Id., p. 10.] Green, however, again asked the Court what Steinmetz's "job description" as stand-by counsel was and whether she could present closing argument on his behalf. [Id., p. 17.] The Court responded that if Green represented himself, Steinmetz would act as stand-by counsel to offer advice confidentially regarding that legal matters that arose.

> Court:  You certainly can decide that you no longer want to appear pro se and that you want her to represent your interests in this case as an attorney.  And if you do that, then she will take over and represent your interests throughout the trial, whether it's questioning witnesses, cross-examining, raising objections or certainly delivering opening statement or closing argument.

[Id., p. 18.]

43.     Near the end of the pretrial conference, the Court noted it had reviewed case law cited by Steinmetz as to her ethical obligations as stand-by counsel.  The Court reaffirmed that Steinmetz was stand-by counsel and further reaffirmed that "the defendant has knowingly, voluntarily and intelligently waived his right to counsel and he appears pro se here in this proceeding and in the trial with Ms. Steinmetz as stand-by counsel."  The Court further noted that it had concluded, notwithstanding Green's dissatisfaction with counsel, that Steinmetz had provided competent and effective counsel to Green. [Id., pp. 25-26.]

44.     Green further stated:

So is it my understanding that if I chose Ann Steinmetz to be my legal representation – at some point during the trial if I decide that I'm not able to perform pro se, is Ann Steinmetz then – will Ann Steinmetz then be recognized as my attorney?

Court: If it comes to that and you decide you do not wish to represent yourself and you do not wish to appear pro se, I will recognize Ms. Steinmetz as your counsel.

[Id., pp. 26-27.]

45.     The jury trial proceeded through March 28, 2008, when the jury found Green guilty of all counts of the superseding indictment. [CR Doc. 181.] On July 31, 2008, the Court sentenced Green to a term of imprisonment if 180 months. [CR Doc. 201.] On August 5, 2008, Green, acting pro se, filed a notice of appeal. [CR Doc. 217.] The Amended Judgment was entered October 1, 2008. [CR Doc. 218.] On September 12, 2008, the Tenth Circuit Court of Appeals appointed appellate counsel to represent Green. [CR Doc. 216.]

46.     In Green's direct appeal, he argued: (1) he did not knowingly and voluntarily waive his Sixth Amendment right to counsel; (2) the District Court erroneously failed to suppress various evidence obtained from a trailer where Green was found; and (3) the District Court erred in treating certain prior convictions used to enhance his sentence as sentencing factors rather than an element of the offense that must be pled in the indictment and proved to the jury beyond a reasonable doubt. Green, 336 F. App'x at 838.

47.     With respect to the latter two arguments, the Tenth Circuit found that Green had waived his right to press the suppression issue on appeal "based on [an alleged] violation of his right to remain silent," and that the enhancement of his sentence argument was "clearly foreclosed by our precedents." Id.

15

48.     Regarding Green's argument that he did not knowingly and voluntarily waive his Sixth Amendment right to counsel, the Tenth Circuit observed that "the extensive record in this case supports the district court's conclusion that Defendant's waiver of his right to counsel was knowing and voluntary."  Id.

49.     On September 29, 2010, Green filed his original § 2255 motion. [Doc. 1.] In the original motion, Green raised a single issue: whether he "clearly and unequivocally," and "knowingly and intelligently" relinquished the benefits of counsel.[4] [Doc. 1, p. 6; typed pages under "Argument," pp. 1-7, attached to Doc. 1.]

50.     Green's supplemental motion, filed December 16, 2010, added a second habeas claim that his appellate counsel was ineffective for failing to argue on direct appeal that Green had not clearly and unequivocally declared a desire to represent himself during the criminal proceeding. [Doc. 1, Doc. 12, p. 5; *see also* Doc. 13, p. 1 (setting out two habeas claims).]

51.     Green's reply [Doc. 21] primarily presents the same or similar argument (set out his other pleadings) regarding his alleged failure to knowingly and intelligently waive counsel and to proceed pro se.  The reply contains Green's typed version of portions of transcripts already set out above.  In addition, the reply argues that the Tenth Circuit erroneously ruled that Green failed to raise the suppression issue of the right to remain silent before the District Court. [Doc. 21, p. 7.]

52.     The government argues that Green is precluded from arguing in a § 2255 motion that he did not clearly and unequivocally declare his desire to represent himself because the Tenth

---

[4]In subsequent Orders, the Court mistakenly stated that Green asserted three claims in his federal habeas petition. [Doc. 8, p. 2; Doc. 11, p. 2.] The three claims referred to by the Court were actually the three grounds raised by Green on direct appeal that Green identified in his original motion under the heading "Direct Appeal." [Doc. 1, p. 3.] The original § 2255 motion set forth a single claim. [Doc. 1, p. 6.]

Circuit already rejected this argument on direct appeal and Green may not re-litigate that same issue in a § 2255 motion. [Doc. 14, p. 13.] Similarly, Green's argument that his appellate counsel failed to raise that same issue on direct appeal must fail because appellate counsel clearly did assert that issue on direct appeal. Green, 336 F. App'x at 838.  The government did not have an opportunity to respond to Green's purported additional claim in his reply that the Tenth Circuit erroneously ruled that Green failed to raise the "suppression issue of the right to remain silent before the District Court," [Doc. 21, pp. 7-8], as that claim was not raised in any of the earlier habeas pleadings.

## Analysis

### I.    Green's Pro Se Representation

53.    Green's habeas pleadings primarily argue that he did not make an "unequivocal request" to represent himself in the underlying criminal proceedings and trial. [See, e.g., Doc. 21, p. 5.] Green states he never asserted he wished to be without counsel and never asked to proceed pro se.  "The court badgered, inticed [sic] and with the help of defense counsel, Ann Steinmetz, coerced Green into saying he would go pro se." [Id., p. 4.] Green further asserts that during the November 1, 2007 hearing, he pleaded for appointment of another attorney.  When he was not permitted appointment of new counsel, he felt he had no choice but to proceed pro se. [Id., p. 6.] Green argues "[t]here is nothing voluntary in [his] statement [to the court that], I have no choice [but to represent myself in this case]." [Id.] Green's claims are belied by the record.  The Trial Judge carefully examined Green, sought to impress on him the serious risks he would assume, and tried to craft an arrangement at Green's request that would allow him to represent his own interests and have the availability of a competent skilled stand-by counsel.

54.    The government argues that Green is precluded from raising this claim in his § 2255 motion because the Tenth Circuit already rejected this same argument on direct appeal. Green, 336

17

F. App'x at 838.  Because he raised the argument on direct appeal, he may not re-litigate the same issue in a § 2255 motion unless there was an intervening change in the law in this Circuit. [Doc. 14, p. 13.]

55.     Absent a change in the law of the circuit, issues previously decided on direct appeal may not be raised in a § 2255 motion.  <u>United States v. Warner</u>, 23 F.3d 287, 291 (10th Cir. 1994). *See also* <u>United States v. Prichard</u>, 875 F.2d 789, 791 (10th Cir. 1989) (same); <u>United States v. Cervantes</u>, 267 F. App'x 741, 743 (10th Cir. Feb. 27, 2008) (unpublished) ("Section 2255 motions are not available to review issues 'previously considered and disposed of' on direct appeal . . . .") (internal citations omitted).

56.     Here, there is no question that, on direct appeal, Green's attorney raised the issue of whether Green's decision to represent himself was made knowingly and voluntarily.  The Tenth Circuit rejected the claim finding that the "extensive record in this case supports the district court's conclusion that [Green's] waiver of his right to counsel was knowing and voluntary." <u>Green</u>, 336 F. App'x at 838.  The Tenth Circuit conducted a *de novo* review of whether a constitutional violation occurred as to Green's pro se representation, observing that a knowing and voluntary waiver of right to counsel depends on the particular facts and circumstances of the case, including the defendant's background, experience, and conduct.  <u>Id.</u>  The Court further noted that a defendant acts voluntarily in representing himself if he "is not forced to make a 'choice' between incompetent counsel or appearing pro se."  <u>Id.</u> at 838-39 (citation omitted).

57.     In the direct appeal, the Tenth Circuit accurately observed that Green attempted to "exploit his own seemingly contradictory statements to show that his decision to represent himself was not knowing and voluntary." <u>Id.</u> at 839.  The record before the Circuit, however, told a different story.  The district court appointed three different attorneys for Green.  The first two were allowed

18

to withdraw at Green's request.  When Green refused representation by Steinmetz, the District Court conducted a lengthy and thorough *ex parte* hearing before determining that Steinmetz was competent and had rendered effective assistance to Green.  Id.  The Tenth Circuit further found it significant that Green did not challenge the District Court's ruling that Steinmetz was competent and had rendered him effective assistance.  Id. n. 3.  In view of the District Court's conclusion that Steinmetz was effective and competent counsel, the Court refused to allow Steinmetz to withdraw.  Notwithstanding the Court's ruling, Green was adamant that Steinmetz not represent him and therefore, chose to proceed pro se.  At one point before trial, Green clarified with the Court that he could still request stand-by counsel, Steinmetz, be allowed to represent him at trial.  The Court agreed Steinmetz could represent Green at trial should Green make the request.  However, he did not ask that Steinmetz represent him.

58.     On appeal, the Tenth Circuit further found that the record demonstrated the District Court's "repeated warnings" to Green about representing himself and the hazards of self-representation.  Id. at 839.

59.     In arguing he was coerced or forced to proceed pro se, Green relied on the not uncommon position that he was presented with the "Hobson's choice"[5] of representation by incompetent counsel or proceeding pro se.  Thus, according to Green, he had no real choice, other than to proceed pro se.  The Tenth Circuit rejected that argument.

> Nor may [Green] show that his decision to represent himself was involuntary, *i.e.,* he was presented with the Hobson's choice of representation by incompetent counsel or proceeding pro se. [Green]

---

[5]Hobson's choice: [After Thomas Hobson (1544-1631), English liveryman, from his requirement that customers take either the horse nearest the stable door or none.] An apparently free choice that offers no actual alternative. Webster's II, New College Dictionary 526 (1995).

does not argue that his third court-appointed counsel was deficient in any way and our review of the record reveals that this was far from the case. To the contrary, the record "supports the district court's view that [Green's] objections to his third appointed counsel "were groundless."

In short, [Green] had the choice to either allow a competent, prepared attorney to represent him or to conduct his own defense. His decision to represent himself-with stand-by counsel's assistance-was clearly "voluntary" under our precedents, as "refusal without good cause to proceed with able appointed counsel" constitutes a 'voluntary' waiver."

Id. at 839-840 (citations omitted). Indeed, the Tenth Circuit has denounced exactly this type of "cat and mouse" game on a number of occasions.

It follows that if a defendant in a criminal proceeding makes an equivocal demand on the question of self-representation, he has a potential ground for appellate reversal no matter how the district court rules. If the district court denies defendant's equivocal demand to represent himself, the defendant, on appeal, will argue that his constitutional right to self-representation has been denied. And if the district court grants defendant's demand for self-representation, the defendant, on appeal, will argue that his waiver of his right to counsel was not intelligent, knowing and unequivocal.

United States v. Treff, 924 F.2d 975, 979 (10th Cir.), cert. denied, 500 U.S. 958 (1991) (emphasis in original); United States v. O'Leary, 52 F.3d 339 (Table, Text in Westlaw), 1995 WL 230292, at *2-3 (10th Cir. Apr. 18, 1995) (same), cert. denied, 516 U.S. 850 (1995).

60.     This Circuit, along with other circuit courts faced with this decision, have found that similar facts demonstrate a valid waiver of counsel. See, e.g., United States v. Willie, 941 F.2d 1384, 1390 (10th Cir. 1991) ("[The defendant's] repeated and unequivocal assertions to his right to self-representation, his continuous stubborn refusal to accept the services of admittedly competent and available, his numerous pro se petitions and his clear expression that he could only with an attorney who shared his views . . . constitute a valid implied waiver of his right to counsel."), cert.

20

*denied*, 502 U.S. 1106 (1992); United States v. Gipson, 693 F.2d 109 (10th Cir. 1982) (commenting that defendant's delaying tactics of unreasonably refusing competent counsel could constitute waiver of counsel), *cert. denied*, 459 U.S. 1216 (1983). *See also* United States v. Hall, 610 F.3d 727, 735, 739 (D.C.Cir. 2010) (court rejected defendant's position that it was not possible to voluntarily choose to waive counsel when the alternative is unprepared counsel, concluding defendant's election to proceed pro was not the result of a Hobson's choice); United States v. Williams, 562 F.3d 938, 942 (8th Cir.) (defendant was not faced with Hobson's choice of proceeding with ineffective counsel or no counsel at all because of court's determination that counsel was effective; moreover, district court could properly require defendant to choose between adequate representation (though not by defendant's counsel of choice) and self representation), *cert. denied*, 130 S.Ct. 238 (2009); United States v. Cunningham, 145 F.3d 1385, 1392 (D.C.Cir.) (where defendant's complaints about attorney lack merit, the court cannot allow itself to be manipulated into appointing new counsel just to placate a defendant threatening to represent himself), *cert. denied*, 525 U.S. 1059 (1998); United States v. Moore, 706 F.2d 538 (5th Cir.) (persistent, unreasonable demand for appointment of new counsel is functional equivalent of knowing and voluntary waiver of counsel), *cert. denied*, 464 U.S. 859 (1983).

61.     The Court concludes that Green may not raise the claim in this § 2255 motion that his decision to represent himself was involuntary or not knowing because it was already raised and rejected on direct appeal. There is no showing that there was an intervening change in the law. Moreover, even if the claim could be raised in this habeas proceeding the Court recommends denying it for the same reasons articulated by the Tenth Circuit. Green was adequately, if not repeatedly, warned about the hazards of self-representation. He continued to refuse the services of appointed counsel Steinmetz even after the Court determined she was competent and effectively

21

representing Green. Notwithstanding Green's knowledge that he could have asked Steinmetz to represent him at any time during the trial, he did not make that request. Green's attempt to fabricate a Hobson's choice fails.

## II.   Appellate Counsel's Alleged Failure to Raise Claim Regarding Alleged Involuntary Self-Representation

62.    The Court permitted Green to file a supplemental § 2255 motion setting forth any additional claims. On December 16, 2010, Green did so [Doc. 12], but added only one claim by alleging appellate counsel did not properly raise on direct appeal Green's purported failure to voluntarily represent himself.

> Appellate counsel intentionally, with reckless disregard of the trial court record omitted from his brief that defendant failed to unequivocally invoke his right to self-representation. A **"DEAD BANG WINNER"** is an issue which was obvious from the trial court record and one which would have resulted in a reversal on appeal.

[Doc. 12, p. 4] (emphasis in original).

63.    As set out above and as is clear from the Tenth Circuit's decision in Green, 336 F. App'x at 838, appellate counsel set forth Green's position that Green allegedly failed to voluntarily and knowingly elect to represent himself. The Tenth Circuit soundly rejected the claim. Therefore, this argument does not constitute grounds to support a claim of ineffective assistance of appellate counsel, and the Court will recommend that the claim be denied and dismissed.

## III.   Tenth Circuit's Alleged Error as to Suppression Issue

64.    The Court initially misread Green's original § 2255 motion. Instead of setting out the single claim Green asserted, the Court inadvertently recited the three claims Green raised on direct appeal as the claims he intended to assert in his habeas petition. In its review of the original petition, the Court did not see grounds for relief as to two of the three supposed habeas claims and

allowed Green to supplement his briefing. When Green filed his supplemental § 2255 motion [Doc. 12], Green set forth only the two claims discussed *supra*. Thus, the Court issued an Order on December 14, 2010 [Doc. 11], stating Green intended to abandon "grounds (2) and (3)" as he provided no further information concerning those claims. However, as discussed "grounds (2) and (3)" were not actually claims Green had raised in the habeas pleadings.

65.     In his reply [Doc. 21, pp. 7-8], Green supplied argument regarding one of those two claims raised on appeal – that the Tenth Circuit allegedly was in error when it ruled that Green failed "to raised the suppression issue of the right to remain silent before the DISTRICT COURT." [Doc. 21, p. 7] (emphasis in original). This purported habeas claim was not briefed by the parties.

66.     The Court considers this claim to have been abandoned since Green could have asserted it in his supplemental § 2255 motion, but did not. Thus, the Court declines to address it, especially here, where Green raised it in his reply brief[6] and the government had no opportunity to brief it. This is appropriate where Green had ample time and opportunity, including multiple extensions of time to file pleadings, to raise the new claim much earlier in this proceeding. *See, e.g.,* Coleman v. BG Maintenance Mgmt. of Colorado, 108 F.3d 1199, 1205 (10th Cir.1997) ("[I]ssues not raised in the opening brief are deemed abandoned or waived."). *See also* United States v. Thames, 214 F.3d 608, 612 n. 3 (5th Cir. 2000) (inadequately briefed claims are waived).

67.     Moreover, even if the claim were permitted to proceed, the Tenth Circuit examined and declined to consider Green's argument. The Circuit Court stated that it had reviewed Green's four suppression motions and agreed with the government that Green "failed to move the district

---

[6]The Court observes that Green raised the bare bones of this appellate claim in a pleading he entitled "Movant's Answer to Order Withdrawing Order to Answer to Establish Schedule," filed January 10, 2011. [Doc. 13.] Whatever the purpose or intent of this pleading, it was not necessary or approved by the Court.

court to suppress the physical evidence obtained from the trailer based on a violation of his Fifth Amendment right to remain silent." <u>Green</u>, 336 F. App'x at 840.  The transcript excerpts cited by Green in his reply [Doc. 21, pp. 7-8] are not directly to the contrary.  Because the Court finds this claim abandoned and also because the claim was raised on appeal, the Court recommends that the claim be denied and dismissed.

### **Recommended Disposition**

The Court recommends that Green's § 2255 motion and supplemental motion be denied [Doc. 1, 12], and that the entire matter be dismissed, with prejudice.


_____
Lorenzo F. Garcia
United States Magistrate Judge